In re Jackie Allen KEENE Peggy Lucille (Brandon) Keene, Debtors.

Bankruptcy No. 3–82–00835.

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 12, 1983.

Anderson, Bowman & Fugate, Margaret B. Fugate, Johnson City, Tenn., for debtors.

Rowland E. Verran, Johnson City, Tenn., for Johnson City Federal Employee's Credit Union.

## MEMORANDUM AND ORDER ON APPLICATION FOR DETERMINATION OF SECURED STATUS

CLIVE W. BARE, Bankruptcy Judge.

The alleged secured status of the claim of the Johnson City Federal Employee's Credit Union (Credit Union) is challenged by the debtors in this case. The validity of the prepetition assignments by the debtors of security interests in their respective civil service retirement funds is at issue. If these assignments are not prohibited under statutes related to Civil Service Retirement, 5 U.S.C.A. §§ 8331–8348 (1980 & Supp. 1982), the debtors request the court to also consider the effect of: (1) the Credit Union's failure to file its claim prior to the conclusion of the first meeting of creditors, as required by Rules Bankr.Proc.Rule 13–302(e)(1), 11 U.S.C.A. (1977); (2) this court's order confirming the debtors' plan providing for treatment of the Credit Union's claim on an unsecured basis, from which no appeal was taken, and the effect of confirmation. 11 U.S.C.A. § 1327 (1979).

### I

The facts are generally undisputed. The debtors, husband and wife, are Postal Service employees in Johnson City, Tennessee. On or about April 2, 1981, the Credit Union extended a $2,500.00 loan to Mr. Keene. His previous note in the amount of $1,000.00 was refinanced and $1,500.00 in loan proceeds were advanced. The purpose for the loan, according to Mr. Keene's application, was to purchase a new automobile. Approximately eight months later, on or about December 1, 1981, the Credit Union made a $2,500.00 loan to Mrs. Keene to enable her to have repair work performed on her automobile and to meet Christmas expenses. This loan to Mrs. Keene also involved refinancing of her previous note in the amount of $1,000.00 and an advance of $1,500.00. The Credit Union's consumer credit disclosure form reflects that the collateral for the respective loans is a security interest in "Share Account & retirement fund."

The debtors filed their joint Chapter 13 petition on June 8, 1982. Their Chapter 13 Statement and proposed plan were filed one week thereafter. In their Chapter 13 Statement, the debtors listed the claim of the Credit Union as an unsecured debt; they expressly indicated they disputed the validity of the Credit Union's security interest in their retirement funds. Their Chapter 13 plan, which has been confirmed, includes the following provision: "Johnson City Credit Union shall be paid as an unsecured claim. Debtors object to any claim of security in the debtors' retirement fund."

An order for meeting of creditors dated June 17, 1982, was mailed to all parties in interest. The final paragraph of the order

recites: "Bankruptcy Rule 13–302(e)(1) provides that a *secured* claim must be filed on or before the first date set for the meeting of creditors." The first meeting of creditors was held on July 26, 1982. The claim of the Credit Union was filed on the same date, but it was filed subsequent to the conclusion of the meeting of creditors. There were no objections to the proposed plan; an order confirming the plan was entered on August 21, 1982.[1]

On August 9, 1982, prior to the entry of the confirmation order, the debtors filed an application requesting the court to determine the status of the claim of the Credit Union. The debtors advanced a tripartite argument for treating the Credit Union's claim as unsecured: (1) 5 U.S.C.A. § 8346(a) (1980) prohibits an assignment of any interest in the debtors' civil service retirement funds; (2) the Credit Union failed to file a proof of claim, as required by Rules Bankr.Proc.Rule 13–302(e)(1), 11 U.S. C.A. (1977), prior to the conclusion of the first meeting of creditors; (3) the confirmed plan provides that the Credit Union's claim will be paid as an unsecured claim. The Credit Union contends that the assignment of a security interest in the retirement funds is permissible pursuant to an exception stated within 5 U.S.C.A. § 8346(a) (1980). It does not address the two remaining arguments of the debtor.[2]

## II

Chapter 83 of title 5 of the United States Code pertains to retirement of most, but not all, federal employees. Subchapter III of this chapter, entitled Civil Service Retirement, is applicable to officers and employees of the Postal Service. 39 U.S. C.A. § 1005(d) (1980). This subchapter concerns the annuity payable to employees, as statutorily defined in 5 U.S.C.A. § 8331(1) (1980), upon retirement. The statute cited by the debtors as proscribing their assignment of a security interest in their retirement funds, 5 U.S.C.A. § 8346(a) (1980), enacts:

> The money mentioned by this subchapter is not assignable, either in law or equity, except under the provisions of subsections (h) and (j) of section 8345 of this title, or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws.

Subsection (h) of 5 U.S.C.A. § 8345 (1980), provides: "An individual entitled to an annuity from the Fund may make allotments or assignments of amounts from his annuity for such purposes as the Office of Personnel Management in its sole discretion considers appropriate." The Credit Union asserts that this provision and supplementing regulations permit the assignment of a security interest by the debtors in their retirement funds. The legislative history of this subsection, which was formerly subsection (g) of 5 U.S.C.A. § 8345, is of particular interest:

## PURPOSE

The bill H.R. 6642 would permit recipients of Federal civil service annuities to

---

1. No appeal was filed to the order confirming the debtors' plan. The Credit Union will receive only a pro rata share with other unsecured claimants under the terms of the plan as confirmed if its security interest is invalid.

2. The Credit Union also contended that the retirement funds are not property of the estate. This contention is immaterial to a determination of the status of the Credit Union's claim.

    The Credit Union further contended that an employee with less than five years of creditable service, 5 U.S.C.A. § 8332 (Supp.1982), is not entitled to an annuity but to a lump-sum benefit, payable under 5 U.S.C.A. § 8342 (1980), and that Congress did not intend to restrict assignments by employees with less than five

years service. Assuming *arguendo* that the Credit Union is correct, it has failed to establish that either debtor had less than five years creditable service when the security interests were granted. The debtors' Chapter 13 Statement reflects that the husband has been employed by the Postal Service for eleven years and the wife for five and one-half years. The wife may or may not have had five years creditable service when she assigned the security interest in her retirement fund to the Credit Union. She may be entitled to additional creditable service resulting from previous employment. In any event, the Credit Union has not presented evidence establishing that its theory is relevant to the facts of this case.

make allotments or assignments from their annuity checks for purposes approved by the Civil Service Commission.

## BACKGROUND

Federal employees are permitted by law (5 U.S.C. 5525) to make allotments or assignment from their pay for purposes prescribed by regulations of the Civil Service Commission. Such purposes now include charitable contributions, dues to labor unions or employee associations, family support and savings.

Annuitants, however, have been barred by 5 U.S.C. 8346 from the same privilege, except for specifically authorized exceptions covering their employment related life and health insurance premiums and medicare premiums.

The practical reason for the ban against general allotments or assignments has been the lack of sufficient computer capacity to accommodate them. That capacity now exists, however.

## STATEMENT

Legislation is required if Federal civil service annuitants are to have the right to make allotments or assignments from their annuities *following retirement.* (emphasis added)

While the Committee believes the purposes for which such allotments or assignments are to be authorized should generally parallel those applicable to active employees, the designation of appropriate purposes is left to the discretion of the Civil Service Commission, which is in the best position to insure uniformity and also to insure that the program is within its capacity.

## SECTIONAL ANALYSIS

Section 1 of H.R. 6642 amends section 8345 of title 5, United States Code, by adding a new subsection (g) at the end thereof. The new subsection (g) authorizes an individual entitled to an annuity from the civil service retirement fund to make allotments or assignments of amounts from his annuity for such purposes as the Civil Service Commission considers appropriate. The Commission has sole discretion to determine the purposes for which allotments or assignments may be made under the authority of subsection (g).

Section 2 of the bill amends section 8346(a) of title 5 to permit allotments or assignments of amounts from annuity payments under the authority of section 8345(g), as amended by the first section of the bill, notwithstanding the general statutory prohibition against assignment, execution, levy or attachment of civil service annuity payments.

S.Rep. No. 537, 94th Cong., 1st Sess. 1–2, *reprinted in* 1975 U.S.Code Cong. & Ad. News 2064–65.

The proscription of 5 U.S.C.A. § 8346(a) (1980) against assignments protects the employee by assuring the preservation of his annuity rights. *See Matter of Dickerson,* 300 N.Y.S. 748, 165 Misc. 230 (Sur.Ct.N.Y. 1937). The stated purpose for the exception to the prohibition against assignments is to allow annuitants to make assignments "from their annuity checks for purposes approved by the Civil Service Commission." Clearly, Congress did not intend to authorize employees to assign rights in their retirement fund previous to retirement. Both of the debtors are currently employed; neither of them is presently receiving any retirement annuity from the Office of Personnel Management. Neither the exception under subsection (h) nor subsection (j) [3] of 5 U.S.C.A. § 8345 (1980) is applicable. The attempted assignment of a security interest by the debtors in their respective retirement funds is invalid under 5 U.S.C.A. § 8346(a) (1980).

This conclusion eliminates the necessity of considering the remaining arguments advanced by the debtors. However, the court

---

**3.** This provision permits payment which would otherwise be made to an annuitant or an employee to be made to another party pursuant to the terms of a court decree in a marital dissolution or separation case.

does observe that there is a division of authority on the issue whether Rules Bankr. Proc.Rule 13–302(e)(1), 11 U.S.C.A. (1977), is applicable in Bankruptcy Code cases.[4]

The assignments by the debtors of security interests in their respective retirement funds are invalid; the claim of the Credit Union is an unsecured claim.[5]

IT IS SO ORDERED.

**4.** Rule 13–302(e) provides that a secured claim, whether or not listed in the Chapter 13 Statement, must be filed on or before the conclusion of the first meeting of creditors in the Chapter 13 case unless the court, on application before the expiration of that time and for cause shown, grants a reasonable, fixed extension of time. Further any claim not properly filed by the creditor within such time shall not be treated as a secured claim for purposes of voting and distribution in the Chapter 13 case.

**5.** This decision in no way determines whether the Credit Union violated the stay provisions of 11 U.S.C.A. § 362(a) (1979) by continuing to make deductions from the debtors' salaries after the Chapter 13 case was filed and also, without court authority, purportedly set off $1,485.37 allegedly held as a "pledge of shares of Credit Union stock." See Order entered August 27, 1982, which directed the trustee to make no payment to the Credit Union until all matters in issue had been resolved.